



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

Rod J. Rosenstein
*United States Attorney*

Michael C. Hanlon
*Chief, Violent Crimes*

36 South Charles Street
*Fourth Floor*
*Baltimore, Maryland 21201*

DIRECT: 410-209-4895
MAIN: 410-209-4800
FAX: 410-962-3124
TTY/TDD: 410-962-4462
Michael.Hanlon@usdoj.gov

July 31, 2013

Tamara Theiss, Esquire
Assistant Federal Public Defender

    Re:    <u>United States v. Eugene Griffin</u>
            Case No. WDQ-12-0585

Dear Ms. Theiss:

       This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by August 2, 2013, it will be deemed withdrawn. The terms of the agreement are as follows:

Offense of Conviction

       1.     The Defendant agrees to plead guilty to Count Two of the Indictment now pending against him, which charges him with Possession with the Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

Elements of the Offense

       2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

       That on or about August 24, 2009, in the District of Maryland,

       1.  The Defendant knowingly possessed a quantity of a mixture of substance containing a detectable amount of cocaine, and



2.   The Defendant intended to distribute that substance to other persons.

### Penalties

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: twenty (20) years imprisonment; a $1,000,000 fine; and a period of supervised release of at least three, and no more than three, years.  In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.1  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call

---

[1]      Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

          d.       The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

          e.       If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

          f.       By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

          g.       If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

          h.       By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

          5.       The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

> The base offense level is 18 pursuant to U.S.S.G. § 2D1.1(c)(11) because the total amount of cocaine and 3, 4 Methylenedioxymethamphetamine possessed by the Defendant was equivalent to approximately 30 kilograms of marijuana. This Office believes that the Defendant may be a career offender, in which case the base offense level would be 32 pursuant to U.S.S.G. § 4B1.1.

> This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

7.      The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range,no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

Rule 11(c)(1)(C) Plea

9.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of no less than 63 months imprisonment and no more than 132 months imprisonment in the custody of the Bureau of Prisons is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release, restitution or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare

the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

<u>Obligations of the United States Attorney's Office</u>

10.     At the time of sentencing, this Office will recommend a sentence of no more than 132 months imprisonment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

11.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

<u>Forfeiture</u>

12.     The parties agree as follows:

a.     The defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order of forfeiture may include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, the court will order the forfeiture of all proceeds obtained or retained as a result of the offense, any property used to commit or to facilitate the commission of the offense, all property involved in the offense, including but not limited to the following:

$7,079 in United States currency, seized on August 24, 2009.

The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

<u>Assisting the Government with Regard to the Forfeiture</u>

b.     The defendant agrees to assist fully in the forfeiture of the foregoing assets. The defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The defendant further agrees that he will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that he will testify truthfully in any such proceeding.

### Waiver of Further Review of Forfeiture

c.      The defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Waiver of Appeal

13.      In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a)      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b)      The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds 132months' imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below 63 months' imprisonment.

c)      Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d)      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

14.    The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

15.    The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

16.    This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplementand none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Michael C. Hanlon
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8\7\13
_____
Date

_____
Eugene Griffin

I am Eugene Griffin's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

8\7\13
_____
Date

_____
Tamara Theiss, Esquire

Attachment A

The United States would prove the following facts beyond a reasonable doubt at trial:

On August 24, 2009, based on information obtained during an investigation, law enforcement officers went to the residence of the defendant, Eugene Griffin. The officers were investigating the area due to specific information they had received concerning an individual described as "Pooh" who matched the description of the defendant. Officers went to 408 N. Bradford Avenue, Baltimore City, Maryland, in connection with that investigation. Upon arrival, a male (matching the description known to the police at the time) was observed in the open front door of 408 N. BradfordAvenue. For safety purposes, officers approached and knocked onthe door to 408 N. Bradford Avenue to further investigate.

At that time, two shirtless males came to the front door. One of the males, later identified as the defendant Eugene GRIFFIN, had a tattoo that read "Pooh" on his chest and also had a scarextending from his chest to his stomach. GRIFFIN was asked who, if anyone else, resided in the dwelling. GRIFFINresponded that the dwelling was separated into different apartments based on floors. GRIFFINfurther stated that he and the other person resided on the first floor and that the second floor was occupied by another older individual. GRIFFIN advised that no one else was in the dwelling and stated "[y ]oucan check."Investigators conducted a protective sweep of the dwelling.

Based on the information then known, a Maryland state search and seizurewarrant was obtained for the address of 408 N. Bradford Avenue. At approximately 7:00 p.m., thesearch and seizure warrant was executed. The search team consisted of law enforcement officerswith both the BPD and the FBI. An orderly search of the dwelling was conducted that resulted in theseizure of the following:

Recovered from a shelf located on the second floor rear bedroom:

(1) a false bottom "Magic Sizing" can containing a knotted plastic bag with a white rock substance suspected to be cocaine;

(2) a knotted plastic bag containing a white powder substance suspected to be cocaine;

(3) a plastic zip lock bag containing seventy seven (77) green pills with a spade logo, suspected to be 3, 4 Methylenedioxymethamphetamine (MDMA), commonly known as Ecstacy;

(4) a plastic bag containing seventy one (71) yellow pills with duck logos, suspected to be Ecstacy; and

(5) a digital scale with white residue suspected to be cocaine.

Also recovered from the second floor rear bedroom:

(1) numerous items of personal paperwork/mail in the name of GRIFFIN;

(2) a Maryland Identification card in the name of GRIFFIN;

(3) photographs of GRIFFIN;

(4) several cellular telephones; and

(5) a locked safe.

The safe was opened and found to contain $7,079.00 in U.S. Currency, stacked and folded into five separate piles.

GRIFFIN was arrested and the seized items were taken to the Baltimore Police Evidence Control Unit and submitted for further analysis. On September 3, 2009, the Baltimore Police Crime Laboratory Section conducted an examination of the suspected controlled substances submitted. During that analysis it was determined that the knotted bag containing a white rock substance was in fact 41.58 grams of cocaine, a controlled substance. The suspected Ecstacy pills were tested and were found to be 44.96 grams of MDMA, a controlled substance.

Based on the training and experience of the officers, the amount of suspected controlled substances recovered, as well as the amount of U.S. Currency seized, all indicated that GRIFFIN possessed the suspected cocaine and suspected Ecstacy pills with the intent to distribute. The Defendant admits that he possessed the cocaine and the MDMA and that the cocaine and MDMA were intended for distribution.

Michael C. Hanlon
Assistant United States Attorney

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

8/7/13
Date

Eugene Griffin

I am Eugene Griffin's attorney. I have carefully reviewed every part of this Statement of Facts with her. To my knowledge, her decision to sign it is a voluntary one.

8/7/13
Date

Tamara Theiss, Esquire